**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

| | |
|---|---|
| Tod A., | Case No. 2:24-cv-00049-DJA |
| Plaintiff, | |
| v. | **Order** |
| Martin O'Malley, Commissioner of Social Security, | |
| Defendant. | |

Before the Court is Plaintiff Tod A.'s brief moving for reversal and payment of benefits or for remand (ECF No. 17) and the Commissioner's brief in response asking the Court to affirm (ECF No. 21). Plaintiff filed a reply. (ECF No. 22). Because the Court finds that the administrative law judge ("ALJ") erred in characterizing Plaintiff's treatment as conservative, but that the remainder of Plaintiff's arguments do not warrant remand or award of benefits, it grants in part and denies in part Plaintiff's motion. The Court finds these matters properly resolved without a hearing. LR 78-1.

## <u>BACKGROUND</u>

### I.    Procedural history.

Plaintiff filed applications for a period of disability, disability insurance benefits, and supplemental security income on November 25, 2015, alleging disability commencing June 2, 2014. (ECF No. 17 at 3). The Commissioner denied the claims by initial determination on February 28, 2017. (*Id.*). Plaintiff requested reconsideration of the initial determination on April 6, 2017. (*Id.*). The Commissioner denied reconsideration on November 22, 2017, and Plaintiff requested a *de novo* hearing before an Administrative Law Judge ("ALJ") on November 30, 2017. (*Id.*). The ALJ denied Plaintiff' benefits on September 18, 2019, and Plaintiff requested the Appeals Council review the decision. (*Id.*). The Appeals Council remanded the matter for

further proceedings on July 6, 2020. (*Id.*). The ALJ presided over the remand hearing and issued

a decision denying benefits on January 13, 2021. (*Id.*). The Appeals Council denied Plaintiff's

request for review on June 24, 2021, making the decision the final decision of the Commissioner.

(*Id.*).

Plaintiff filed a civil action appealing that decision, and on November 29, 2021, the court

approved the parties' stipulation to remand this matter for further administrative proceedings. (*Id.*

at 3-4) (citing *Armstrong v. Kijakazi*, 2:21-cv-01534-BNW). The ALJ presiding over the remand

hearing issued a decision denying benefits on October 10, 2023. (*Id.*). Plaintiff did not request

review and the Appeals Council did not assume jurisdiction within sixty days of the decision,

making the ALJ's decision the final decision of the Commissioner. (*Id.*).

**II.    The ALJ decision.**

The ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R.

§ 404.1520(a) and 20 C.F.R. § 416.920(a). (AR 3840-65). At step one, the ALJ found that

Plaintiff had not engaged in substantial gainful activity since June 2, 2014. (AR 3843). At step

two, the ALJ found that Plaintiff has the following severe impairments: degenerative disc disease,

compression fractures, right ankle pathologies, bilateral knee pathologies, neuropathies, and

ADHD. (AR 3843-45). At step three, the ALJ found that Plaintiff does not have an impairment

or combination of impairments that meets or medically equals the severity of one of the listed

impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 3845). In making this finding,

the ALJ considered Listings 1.15, 1.17, 1.18, 11.14, and 12.11. (AR 3845-47).

At step four, the ALJ found that Plaintiff,

> has the residual functional capacity to perform light work as defined
> in 20 CFR 404.1567(b) and 416.967(b) except any work involving
> standing or walking for more than four hours in an eight hour work
> day[1]; no more than occasional operation of foot controls bilaterally;

---

[1] The RFC included the following footnote:

> Pursuant to POMS DI 25025.015, the undersigned finds that the
> combined total of walking and standing up to four hours rather than
> six hours is not inconsistent with work within the light exertion

1
2
3
4
5
6
7

> no more than frequent operation of controls with the left hand; no more than occasional reaching overhead to the left and occasional reaching overhead to the right; no more than frequent handling with the left hand; no more than frequent fingering with the left hand; no more than occasional climbing ramps and stairs; any climbing ladders, ropes, or scaffolds; no more than occasional stooping, kneeling, crouching, or crawling; any work in unprotected heights; no more than occasional working near moving mechanical parts; no more than occasional operation of a motor vehicle; and no more than occasional exposure to extreme cold, heat, and vibrations. Additionally, the claimant can understand, remember, and carry out detailed but not complex tasks.

8
9

> (AR 3848-63).

10    At step five, the ALJ found that Plaintiff is unable to perform any past relevant work, but

11  that other jobs exist in significant numbers in the national economy that Plaintiff could perform,

12  including small products assembler, production assembler, and document preparer.  (AR 3864).

13  Accordingly, the ALJ found that Plaintiff had not been disabled since June 2, 2014, through the

14  date of the decision.  (AR 3865).

15                                      **STANDARD**

16    The court reviews administrative decisions in social security disability benefits cases

17  under 42 U.S.C. § 405(g).  *See Akopyan v. Barnhard*, 296 F.3d 852, 854 (9th Cir. 2002).  Section

18  405(g) states, "[a]ny individual, after any final decision of the Commissioner of Social Security

19  made after a hearing to which he was a party, irrespective of the amount in controversy, may

20  obtain a review of such decision by a civil action…brought in the district court of the United

21  States for the judicial district in which the plaintiff resides."  The court may enter, "upon the

22  pleadings and transcripts of the record, a judgment affirming, modifying, or reversing the

23  decision of the Commissioner of Social Security, with or without remanding the case for a

24  rehearing."  *Id.*  The Ninth Circuit reviews a decision of a District Court affirming, modifying, or

25
26
27
28

> range given that the capacity for light work would only be slightly reduced (See SSR 83-10).

1    reversing a decision of the Commissioner *de novo*.  *Batson v. Commissioner*, 359 F.3d 1190,

2    1193 (9th Cir. 2003).

3    The Commissioner's findings of fact are conclusive if supported by substantial evidence.

4    *See* 42 U.S.C. § 405(g); *Ukolov v. Barnhart*, 420 F.3d 1002 (9th Cir. 2005).  However, the

5    Commissioner's findings may be set aside if they are based on legal error or not supported by

6    substantial evidence.  *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir.

7    2006); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  The Ninth Circuit defines

8    substantial evidence as "more than a mere scintilla but less than a preponderance; it is such

9    relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

10    *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *see also Bayliss v. Barnhart*, 427 F.3d

11    1211, 1214 n.1 (9th Cir. 2005).  In determining whether the Commissioner's findings are

12    supported by substantial evidence, the court "must review the administrative record as a whole,

13    weighing both the evidence that supports and the evidence that detracts from the Commissioner's

14    conclusion."  *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *see also Smolen v. Chater*, 80

15    F.3d 1273, 1279 (9th Cir. 1996).  Under the substantial evidence test, findings must be upheld if

16    supported by inferences reasonably drawn from the record.  *Batson*, 359 F.3d at 1193.  When the

17    evidence will support more than one rational interpretation, the court must defer to the

18    Commissioner's interpretation.  *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Flaten*

19    *v. Sec'y of Health and Human Serv.*, 44 F.3d 1453, 1457 (9th Cir. 1995).

20    **DISABILITY EVALUATION PROCESS**

21    The individual seeking disability benefits has the initial burden of proving disability.

22    *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir 1995).  To meet this burden, the individual must

23    demonstrate the "inability to engage in any substantial gainful activity by reason of any medically

24    determinable physical or mental impairment which can be expected . . . to last for a continuous

25    period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  More specifically, the individual

26    must provide "specific medical evidence" in support of her claim for disability.  20 C.F.R.

27    § 404.1514.  If the individual establishes an inability to perform her prior work, then the burden

28

1    shifts to the Commissioner to show that the individual can perform other substantial gainful work

2    that exists in the national economy.  *Reddick*, 157 F.3d at 721.

3           The ALJ follows a five-step sequential evaluation process in determining whether an

4    individual is disabled.  *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987) (citing 20 C.F.R.

5    §§ 404.1520, 416.920).[2]  If at any step the ALJ determines that she can make a finding of

6    disability or non-disability, a determination will be made, and no further evaluation is required.

7    *See* 20 C.F.R. § 404.1520(a)(4); *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).  Step one requires

8    the ALJ to determine whether the individual is engaged in substantial gainful activity ("SGA").

9    20 C.F.R. § 404.1520(b); 20 C.F.R. § 416.920(a)(4)(i).  SGA is defined as work activity that is

10   both substantial and gainful; it involves doing significant physical or mental activities usually for

11   pay or profit.  20 C.F.R. § 404.1572(a)-(b).  If the individual is engaged in SGA, then a finding of

12   not disabled is made.  If the individual is not engaged in SGA, then the analysis proceeds to step

13   two.

14          Step two addresses whether the individual has a medically determinable impairment that

15   is severe or a combination of impairments that significantly limits her from performing basic

16   work activities.  20 C.F.R. § 404.1520(c); 20 C.F.R. § 920(a)(4)(ii).  An impairment or

17   combination of impairments is not severe when medical and other evidence establishes only a

18   slight abnormality or a combination of slight abnormalities that would have no more than a

19   minimal effect on the individual's ability to work.  20 C.F.R. § 404.1521; 20 C.F.R.§ 920(c); *see*

20   *also* Social Security Rulings ("SSRs") 85-28.   If the individual does not have a severe medically

21   determinable impairment or combination of impairments, then a finding of not disabled is made.

22   If the individual has a severe medically determinable impairment or combination of impairments,

23   then the analysis proceeds to step three.

24          Step three requires the ALJ to determine whether the individual's impairments or

25   combination of impairments meet or medically equal the criteria of an impairment listed in 20

26   _____

27   [2] 20 C.F.R. § 404 addresses federal old-age, survivors, and disability insurance while 20 C.F.R.
     § 416 addresses supplemental security income for the aged, blind, and disabled.  However, the
28   five-step evaluation process under either section is the same.

C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526; 20

C.F.R. § 416.920(a)(4)(iii).  If the individual's impairment or combination of impairments meet

or equal the criteria of a listing and the duration requirement (20 C.F.R. § 404.1509; 20 C.F.R.

§ 416.909), then a finding of disabled is made.  20 C.F.R. § 404.1520(h); 20 C.F.R.

§ 416.920(a)(4)(iii).  If the individual's impairment or combination of impairments does not meet

or equal the criteria of a listing or meet the duration requirement, then the analysis proceeds to

step four.

　　　　Before moving to step four, however, the ALJ must first determine the individual's RFC,

which is a function-by-function assessment of the individual's ability to do physical and mental

work-related activities on a sustained basis despite limitations from impairments.  *See* 20 C.F.R.

§ 404.1520(e); *see also* SSR 96-8p.  In making this finding, the ALJ must consider all the

relevant evidence, such as all symptoms and the extent to which the symptoms can reasonably be

accepted as consistent with the objective medical evidence and other evidence.  20 C.F.R.

§ 404.1529; 20 C.F.R. § 416.945; *see also* SSR 16-3p.  To the extent that statements about the

intensity, persistence, or functionally limiting effects of pain or other symptoms are not

substantiated by objective medical evidence, the ALJ must evaluate the individual's statements

based on a consideration of the entire case record.  The ALJ must also consider opinion evidence

in accordance with the requirements of 20 C.F.R. § 404.1527 and 20 C.F.R. § 416.913(a)(2).

　　　　Step four requires the ALJ to determine whether the individual has the RFC to perform

her past relevant work ("PRW").  20 C.F.R. § 404.1520(f); 20 C.F.R. § 416.920(a)(1)(iv).  PRW

means work performed either as the individual actually performed it or as it is generally

performed in the national economy within the last fifteen years or fifteen years before the date

that disability must be established.  In addition, the work must have lasted long enough for the

individual to learn the job and performed at SGA.  20 C.F.R. §§ 404.1560(b) and 404.1565; 20

C.F.R. § 416.960(b)(1)(i).  If the individual has the RFC to perform her past work, then a finding

of not disabled is made.  If the individual is unable to perform any PRW or does not have any

PRW, then the analysis proceeds to step five.

Step five requires the ALJ to determine whether the individual can do any other work considering her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g); 20 C.F.R. § 416.920(a)(4)(v). If she can do other work, then a finding of not disabled is made. Although the individual generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Commissioner. The Commissioner is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the individual can do. *Yuckert*, 482 U.S. at 141-42.

## ANALYSIS AND FINDINGS

I.     **Whether the ALJ's RFC is supported by substantial evidence during the closed period of disability.**

The ALJ's findings of fact, as embodied in the RFC, are conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005). When the evidence will support more than one rational interpretation, the Court must defer to the Commissioner's interpretation. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). So, the issue before the Court is not whether the Commissioner could reasonably have reached a different conclusion, but whether the final decision is supported by substantial evidence. *Miller v. Kijakazi*, No. 2:22-CV-00355-EJY, 2023 WL 1525429, at *6–7 (D. Nev. Feb. 3, 2023).

Plaintiff makes three arguments to support his assertion that the RFC is not supported by substantial evidence.[3] First, Plaintiff argues, although indirectly, that the ALJ should have

---

[3] In this section of his argument, Plaintiff also argues that the ALJ mischaracterized Plaintiff's activities of daily living and that his activities "fail to support the RFC," taking care to point out the "deficiencies in [the ALJ's] reasoning." (ECF No. 17 at 10, 12). But Plaintiff's arguments are contradictory because he later acknowledges in a footnote that "[i]t does not appear that the ALJ actually relied on [Plaintiff's] activities to fashion an RFC." (ECF No. 17 at 8). Instead, Plaintiff asserts "the ALJ appeared to have evaluated [Plaintiff's] activities in the context of explaining why she rejected [Plaintiff's] testimony." (*Id.*). And indeed, while the ALJ does reference Plaintiff's activities of daily living in other portions of the RFC determination, the ALJ primarily relies on those activities to analyze the credibility of Plaintiff's subjective testimony. (AR 3850). Because of this, Plaintiff largely repeats his arguments regarding his activities of daily living later in his brief, when arguing that the ALJ did not provide clear and convincing reasons for rejecting Plaintiff's subjective testimony. The Court finds no reason to address the

considered whether Plaintiff is entitled to a closed period of disability.  Second, Plaintiff argues that none of the medical opinions support the RFC.  Third, Plaintiff argues that the medical records do not support the RFC.  The Court is not persuaded by these arguments and denies Plaintiff's request to remand the case for further proceedings on this issue.

### A.    Whether the ALJ should have assessed that Plaintiff was entitled to a closed period of disability.

Plaintiff's argument that "the residual functional capacity assessment lacks the support of substantial evidence during the closed period of disability," contains an underlying premise that Plaintiff does not fully develop and that the Commissioner does not address: that Plaintiff is entitled to a closed period of disability.  A closed period of disability is where a claimant is disabled for a certain, closed period of time, but has since medically improved.  *Attmore v. Colvin*, 827 F.3d 872, 873-74 (9th Cir. 2016).  The ALJ did not assess that Plaintiff was entitled to a closed period of disability.  Instead, the ALJ found that Plaintiff was not disabled at all from the alleged date of onset until the date of the decision.  (AR 3865)  Plaintiff nonetheless appears to argue that the ALJ should have assessed a closed period of disability, asserting that  "[w]hile [Plaintiff] maintains that his disability is ongoing, [he] argues solely for the purposes of this issue that his disability through approximately January 16, 2020, is established by the medical evidence."  (ECF No. 17 at 6).  But other than this single sentence, Plaintiff provides no analysis about closed periods of disability, why the ALJ should have assessed one, or why the Court should find that the ALJ erred in not doing so.  Instead, he simply summarizes his surgeries and treatments and concludes that the ALJ departed from the medical evidence to assess an RFC of light work.

---

same arguments twice.  Instead, the Court's analysis of the ALJ's discussion of Plaintiff's activities of daily living is more accurately—and less repetitively—made in addressing Plaintiff's argument that the ALJ erred in not providing clear and convincing reasons to reject his testimony. The Court finds that Plaintiff's activities of daily living support the RFC for the same reasons it finds that the ALJ did not err in relying on them to discount Plaintiff's testimony.  So, the Court does not further address Plaintiff's arguments regarding his activities of daily living here.

1    However, the question of whether the ALJ should have assessed a closed period of

2    disability is distinct from the question of whether the ALJ's RFC is supported by substantial

3    evidence. This is because, in a closed period case, the ALJ must have already found the claimant

4    to be disabled, and then must compare the RFC from the time the claimant was disabled with the

5    claimant's current RFC to determine whether the claimant's medical improvement is related to

6    the claimant's ability to work. *See Mendoza v. Apfel*, 88 F.Supp.2d 1108, 1113 (C.D. Cal. 2000).

7    So, for the Court to find in this case that the ALJ erred by not assessing a closed period of

8    disability, it is not enough for the Court to simply find that the ALJ's RFC is not supported by

9    substantial evidence. The Court must also go a step further and conclude that the evidence

10   demonstrates that Plaintiff was disabled between June 2, 2014, and January 16, 2020. But

11   Plaintiff provides no argument, analysis, or authority for the Court to make this leap. And the

12   Court declines to do so based on Plaintiff's single-sentence argument, and conclusory statements

13   in his reply, that he is entitled to a closed period of disability. *See Independent Towers of*

14   *Washington v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) (explaining that the Ninth Circuit

15   has "repeatedly admonished that we cannot manufacture arguments" for a party).

16       **B.    *Whether the medical opinions support the RFC.***

17       An ALJ's RFC determination need not reflect any particular medical opinion precisely.

18   *Howell v. Kijakazi*, No. 20-cv-02517-BLM, 2022 WL 2759090, at *7 (S.D. Cal. July 24, 2022)

19   (citing *Turner v. Commissioner*, 613 F.3d 1217, 1223 (9th Cir. 2010)). But an ALJ cannot make

20   medical judgments, only legal judgments, and cannot interpret raw medical data. *Id.* (citing *Day*

21   *v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975)). So, an ALJ errs when the ALJ rejects all of

22   the medical opinions, and then assesses an RFC without making it clear how the ALJ translated

23   the evidence into the RFC. *See Holtan v. Kijakazi*, No. 2:22-cv-01222-VCF, 2023 WL 2424648,

24   at *3 (D. Nev. Mar. 9, 2023) (finding that the ALJ erred by summarizing the medical evidence

25   without making it clear how the ALJ then translated that evidence into an RFC, which was

26   "particularly concerning because the ALJ did not rely on any of the medical opinions, underline all

27   of the medical opinions of record unpersuasive.") (emphasis in original).

28

1    Here, the Court finds that the ALJ did not err in relying on the medical opinions when

2    assessing the RFC.  Plaintiff's argument on this point is underdeveloped.  Plaintiff simply argues

3    that "none of the opinion evidence of record supports the RFC" and then summarizes the medical

4    opinions and the weight the ALJ gave them.  (*Id.* at 8-9).   So, Plaintiff presumably argues that,

5    because "none of the medical opinions of record supports the RFC," the ALJ's RFC must

6    somehow be erroneous.  But Plaintiff does not bridge the gap between these conclusions by

7    explaining why or how.  Plaintiff does not argue that the ALJ interpreted the raw medical data

8    without explaining how she translated the evidence into the RFC or erred in assessing the medical

9    opinions by giving some opinions more weight than others.[4]  While Plaintiff makes these

10   arguments at other portions in the brief, he does not raise them here.  And the Court declines to

11   fill in the gaps of this underdeveloped argument or make the leap Plaintiff asks it to.  This is

12   particularly true because, later in its decision, the Court addresses the arguments that Plaintiff

13   makes regarding the medical opinions elsewhere in his brief.  So, the Court declines to remand

14   the case on this ground.

15       **C.    *Whether the medical record supports the RFC.***

16       An RFC assessment must "[c]ontain a thorough discussion and analysis of the objective

17   medical and other evidence, including the individual's complaints of pain and other symptoms

18   and the adjudicator's personal observations, if appropriate."  SSR 96-8p, 61 Fed. Reg. at 34478.

---

[4] The closest Plaintiff comes to making one of these arguments is when he states that the ALJ "noted" (the ALJ really gave the opinion "some weight") the opinion of Michal Coy, D.O., who opined that Plaintiff could return to full time work.  (ECF No. 17 at 9).  Plaintiff appears to argue that the ALJ should not have given as much weight as she did to Dr. Coy's opinion, because it was contradicted by another form Dr. Coy filled out indicating that Plaintiff could not walk two hundred feet without stopping to rest.  (*Id.*).  But Plaintiff does not explicitly make this argument.  Instead, Plaintiff reverts to his original argument, that "[r]egardless of what Dr. Coy actually opined, neither of his opinions are consistent with the RFC."  (*Id.*).

The Court will not grapple with an argument that Plaintiff did not make.  And even if it did, Plaintiff provides no reason why the Court should find Dr. Coy's note that Plaintiff could only walk two hundred feet without stopping to rest to be inconsistent with his ability to return to full time work without restrictions.  For example, Plaintiff does not argue that his job at the time required walking more than two hundred feet at a time such that a prohibition on doing so would be a restriction.  So, even if Plaintiff explicitly made this argument, the Court would not find it persuasive.

To the extent the evidence could be interpreted differently, it is the role of the ALJ to resolve conflicts and ambiguity in the evidence. *See Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 599-600 (9th Cir. 1999).

The Court does not find that the ALJ erred in discussing and analyzing the medical evidence when assessing Plaintiff's RFC. Plaintiff first takes issue with the ALJ's statement that "the longitudinal evidence of record confirms the claimant has just not been limited by the symptoms of his conditions to the point of total disability." (AR 3851). Plaintiff asserts that this "is a misapplication of the correct legal standards because Social Security is not about total incapacity…[but] is about specific functional limitations." (ECF No. 17 at 13). The Court is not persuaded by this argument. While, of course, a claimant need not be "utterly incapacitated" to be eligible for benefits, the Court does not take the ALJ's remark to mean that the ALJ was applying a heightened disability standard. *See Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001). When read in context, the ALJ used this statement as an introductory statement, before addressing the medical evidence, and not as a statement of the standard the ALJ was employing. This is demonstrated by the fact that the ALJ also outlined the standard, explaining that "[d]isability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months." (AR 3841).

Plaintiff then asserts that the ALJ erred by highlighting normal examination findings that were close in time to Plaintiff's surgeries and extensive treatment. (ECF No. 17 at 13-17). Plaintiff argues that the normal examination findings' "qualitative worth" is diminished because Plaintiff "soon thereafter was recommended to undergo, and he elected to receive an invasive form of treatment." (*Id.*). Plaintiff argues that the ALJ relied on these normal examination findings in forming the RFC, despite the fact that they were "superseded by the physicians' recommendations and [Plaintiff's] electing to undergo aggressive forms of medical treatment." (*Id.* at 17). And because they were "superseded," Plaintiff asserts that the normal examination findings cannot constitute substantial evidence to support the RFC. (*Id.*).

1       The Court is not persuaded by this argument. Plaintiff provides no authority for the

2  proposition that normal examination findings are "superseded" or "diminished" by treatments like

3  surgeries and injections. Of course, the ALJ would err if she only noted the normal examination

4  findings and ignored the evidence of Plaintiff undergoing surgeries, injections, and other invasive

5  treatments. *See Garrison v. Colvin*, 759 F.3d 995, 1017 n.23 (9th Cir. 2014) (citing *Scott v.*

6  *Astrue*, 647 F.3d 734, 739-40 (7th Cir. 2011) for its proposition that an ALJ may not "cherry-

7  pick" from mixed medical records to support a denial of benefits). But the ALJ did not do that

8  here. Instead, the ALJ outlined Plaintiff's medical history, including his normal and abnormal

9  examination findings and his extensive treatments. (AR 3851-56). For example, the ALJ noted

10  that, while Plaintiff had a full range of motion in his neck and spine, grossly intact cranial nerves,

11  and no focal neurological deficits on November 30, 2015, he underwent surgery on his cervical

12  spine on December 6, 2015. (AR 3852). Later, the ALJ noted that at a neurology follow-up in

13  May of 2018, Plaintiff presented with normal gait, normal motor strength, and intact sensation.

14  (AR 3853-54). But the ALJ also pointed out that Plaintiff underwent caudal epidural injections

15  and medial branch blocks between January 1, 2017, and December 5, 2018. (AR 3854). The

16  ALJ summarized Plaintiff's treatment by noting that, while some of Plaintiff's treatments "were

17  not overall successful," "[d]eficits in these records are few, including tenderness and some

18  decreased range of motion with appropriate affect and appearance." (AR 3855). And ultimately,

19  the ALJ noted that "[l]ater in these records, the claimant initially reported significant

20  improvement with a spinal cord stimulator such that he required less medication which was still

21  noted to provide 40 per cent relief…The claimant then opted not to pursue the stimulator and

22  received a pain pump in mid-2020. After this time, he largely obtained refills of this medication

23  with only a few consistent objective deficits." (AR 3855). While Plaintiff believes that the ALJ

24  should have interpreted the evidence differently, it is the role of the ALJ to resolve conflicts and

25  ambiguity in the evidence, not the Court's. So, the Court declines to remand the case to the ALJ

26  on this ground.

27       Plaintiff also argues that the ALJ interpreted raw medical data without a corresponding

28  medical opinion to create the functional terms of the RFC. (ECF No. 17 at 14-15). But Plaintiff

provides no examples of this, instead simply arguing that "[i]t is unclear how the ALJ in this case with no legal[5] expertise could adjudge how the abundant raw medical data translate into specific functional terms." (*Id.*). Again, this argument is underdeveloped and expects the Court to fill in the gaps of Plaintiff's reasoning. But even if the Court were inclined to do so, the Court would not find that the ALJ erred in this regard. The cases on which Plaintiff relies refer to the ALJ's inability, because she is a layman, to translate raw medical data (like MRIs and x-rays) into functional terms (like a claimant's ability to walk, balance, kneel, etc.) without a medical opinion explaining how that data translates into functional terms.[6] And indeed, as outlined before, an ALJ errs by summarizing medical evidence without making it clear how the ALJ then translated that evidence into an RFC, especially if the ALJ does not rely on any medical opinions and finds all of the medical opinions unpersuasive. *See Holtan v. Kijakazi*, No. 2:22-cv-01222-VCF, 2023 WL 2424648, at *3 (D. Nev. Mar. 9, 2023). But, while it is a somewhat closer question, that is not what happened here.

As a preliminary matter, the ALJ did appear to rely on some raw medical data in assessing the RFC, as she noted below:

> X-rays reviewed on this date found cervical spondylosis, stenosis at C5-6, C6-7 with mechanical and radicular symptoms *supporting no more than occasional reaching overhead*; and L4-5 inflammatory discopathy and to some degree L5-S1 with disc herniation with mechanical and radicular symptoms *supporting a sedentary exertional level*.

> (AR 3852) (emphasis added).

---

[5] It appears that Plaintiff may have meant to say "medical" expertise.

[6] *See Padilla v. Astrue*, 541 F.Supp.2d 1102, 1106-1107 (C.D. Cal. Feb. 21, 2008) (finding that an ALJ erred by relying on inconsistent medical testimony to deny a claim at step two because an ALJ is "simply not qualified to interpret raw medical data in functional terms," but must have the support of a physician's medical assessment"); *see Sherley S. v. Kijakazi*, No. EDCV 20-01986-AS, 2022 WL 971955, at *4 (C.D. Cal. Mar. 31, 2022) (finding that an ALJ erred by relying on evidence like MRIs, x-rays, and diagnoses to assess the RFC without explaining how); *see Carrie N. v. Saul*, No. ED CV 19-2129-SP, 2021 WL 1240781, at *7 (C.D. Cal. Mar. 31, 2021) (explaining that an ALJ erred in assessing an RFC without a medical opinion or explanation regarding how the ALJ translated a diagnosis without an accompanying medical opinion).

1    However, even if this was in error, it was harmless because the ALJ also addressed

2    medical opinions which assessed functional limitations.  In assessing the physical[7] RFC, the ALJ

3    considered the medical RFC opinions of C. Lalimore, D.C.; F. Lee, M.D.; the state agency review

4    physicians; and Michael Coy, D.O.  (AR 3857-60).  Dr. Lalimore opined that Plaintiff could only

5    lift from ten to twenty pounds; could only sit, stand, and walk less than two hours in an eight-hour

6    workday; needed a sit/stand option at work; needed unscheduled breaks; could not squat; and

7    would miss two days of work a month.  (AR 3857).  The ALJ ultimately gave Dr. Lalimore's

8    opinion little weight, but "agree[d] that some limitations are required but not to the degree noted

9    by Dr. Lalimore."  (AR 3858).  Dr. Lee opined that Plaintiff could lift and carry ten pounds

10   rarely; sit for less than four hours and stand and walk for less than two hours in an eight-hour

11   workday; never stoop, bend, kneel, or crouch; and would miss more than four days of work a

12   month.  (AR 3858).  The ALJ also gave this opinion little weight, but again "agree[d] that some

13   limitations are required but not to the degree noted by Dr. Lee."  (AR 3858).  Finally, Dr. Coy

14   opined that Plaintiff could return to full time work without restrictions, and the ALJ gave this

15   opinion some weight.  (AR 3860).  The ALJ explained that while she "agree[d] that the claimant

16   is capable of full-time work," she also "does feel that some restrictions are warranted."  (AR

17   3860).  While the ALJ's RFC does not align perfectly with any one of these opinions, it is not

18   required to.  And while the ALJ could have provided more detailed explanations about how she

19   translated the evidence into the RFC, the Court finds that the ALJ sufficiently discussed the

20   medical opinions such that her decision to assess functional limitations that fell between those of

21   the medical opinions was not in error.  The ALJ did not simply summarize the medical evidence

22   without making it clear how she translated that evidence into the RFC.  So, even if the Court were

23   to manufacture these arguments for Plaintiff, it would not find that the ALJ erred in interpreting

24   the raw medical data.

25

26   [7] The ALJ also considered the opinion of David Sullivan, Ph.D. in assessing the RFC.  (AR
     3859).  But Dr. Sullivan opined primarily on Plaintiff's psychological limitations, and not on his
27   physical limitations.  Plaintiff does not argue that the ALJ erred in assessing Plaintiff's
     psychological limitations in the RFC and does not address Dr. Sullivan.  So, the Court does not
28   address the ALJ's consideration of Dr. Sullivan's opinion.

**II.    Whether the ALJ articulated specific and legitimate reasons for rejecting Plaintiff's statements.**

The ALJ must make two findings before the ALJ can find a claimant's pain or symptom testimony not credible.  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'"  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)).  Second, if the claimant has produced that evidence, and the ALJ has not determined that the claimant is malingering, the ALJ must provide "specific, clear and convincing reasons for" rejecting the claimant's testimony regarding the severity of the claimant's symptoms.  *Garrison v. Colvin*, 759 F.3d 995, 1014-15 (9th Cir. 2014).

Because the "grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based," the agency must explain its reasoning.  *Securities and Exchange Commission v. Chenery Corp.*, 318 U.S. 80, 87 (1943); *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1101 (9th Cir. 2014).  The Ninth Circuit thus requires the ALJ to "specifically identify the testimony [from a claimant] she or he finds not to be credible and ... explain what evidence undermines the testimony."  *Treichler*, 775 F.3d at 1102 (citing *Bunnell*, 947 F.2d at 346 and *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001)).  That means "[g]eneral findings are insufficient."  *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995) (superseded on other grounds); *see Holohan*, 246 F.3d at 1208 (concluding "that the ALJ's credibility determination was erroneous" because it was based on the ALJ's characterization of "the 'record in general'").

An ALJ must specifically identify the testimony he finds not credible and why.  *Treichler*, 775 F.3d at 1102-1103.  "An ALJ's vague allegation that a claimant's testimony is not consistent with the objective medical evidence, without any specific findings in support of that conclusion is insufficient for our review."  *Id.* (internal quotations omitted).  "Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for us to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence."  *Id.*

1     Plaintiff makes four arguments to support his assertion that the ALJ did not provide

2   sufficient reasons to reject his testimony.  First, Plaintiff asserts that the ALJ mischaracterized his

3   activities of daily living.  Second, Plaintiff argues that the ALJ failed to connect the medical

4   evidence to the testimony the ALJ claimed that the evidence contradicted.  Third, Plaintiff argues

5   that the ALJ did not demonstrate that Plaintiff actually improved.  Fourth, Plaintiff argues that the

6   ALJ improperly characterized Plaintiff's treatment as conservative.  The Court finds that the

7   fourth argument is persuasive, but not the remaining three.  It also does not find that reversal and

8   award of benefits is appropriate.  So, the Court remands the case only on the issue of whether the

9   ALJ properly characterized Plaintiff's treatment as conservative.

10           ***A.       Whether the ALJ mischaracterized Plaintiff's activities of daily living.***

11           There are two grounds for an ALJ to use a claimant's activities of daily living to support

12   an adverse credibility determination: (1) when the activities meet the threshold for transferrable

13   work skills; and (2) when the activities contradict a claimant's other testimony.  *Nicole N.-M. v.*

14   *Commissioner, Social Security Administration*, 649 F.Supp.3d 1025, 1035 (D. Or. 2022) (citing

15   *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007)).  To impact a claimant's credibility, the activity

16   has to be "inconsistent with [c]laimant's claimed limitations."  *Reddick v. Chater*, 157 F.3d 715,

17   722 (9th Cir. 1998).  The ALJ cannot mischaracterize statements and documents in the record or

18   take these out of context in order to reach his conclusion on the claimant's credibility.  *Id.* at 722-

19   23.  Additionally, the claimant's ability to perform limited basic daily activities is not a clear and

20   convincing reason to reject a claimant's testimony.  *See id.* at 722 (explaining that "disability

21   claimants should not be penalized for attempting to lead normal lives in the face of their

22   limitations"); *Webb v. Barnhart*, 433 F.3d 683, 688 (9th Cir. 2005) (explaining that "[t]he mere

23   fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car,

24   or limited walking for exercise, does not in any way detract from his credibility as to his overall

25   disability.  One does not need to be utterly incapacitated in order to be disabled.").  Regarding

26   transferability to a work setting, "[t]he ALJ must make specific findings relating to the daily

27   activities and their transferability to conclude that a claimant's daily activities warrant an adverse

28

1    credibility determination." *Orn*, 495 F.3d at 639 (internal citation and quotations omitted)

2    (cleaned up).

3            The Court finds that the ALJ properly considered Plaintiff's activities of daily living when

4    analyzing the credibility of Plaintiff's testimony. The ALJ outlined Plaintiff's activities as

5    follows:

6                Despite the alleged impairment, the claimant has engaged in a
                somewhat normal level of daily activity and interaction (SSR 16-
7                3p). The claimant admitted activities of daily living including
                working for Door-Dash and now for Pizza Hut a few hours a week
8                delivering food, he drives, swims, goes to a program for his
                drinking, prepares meals, washes dishes, does laundry, shops, goes
9                to church, watches television, uses the internet, feeds and plays with
                his dog. In function reports, the claimant acknowledged he takes
10               baths instead of showers but otherwise can manage his personal
                care, takes his dog to the vet, does household cleaning, takes out the
11               trash, vacuums, can go out alone, uses a computer, can manage his
                finances, socializes with his family, goes to his nieces softball games
12               and practice and her choir performances, has no problems getting
                along with family, friends, neighbors or others, and can follow
13               instructions good [sic]…He told Dr. Sullivan that he lives with his
                mother and visits his sister and niece regularly, he uses a computer
14               to play games or type notes and he also watches a great deal of sports
15               on television.

16

17           (AR 3850).

18           Plaintiff asserts that many of his activities of daily living are easily performed by a

19    disabled person. But Plaintiff provides no authority for this statement and fails to explain why the

20    Court should employ this analysis. Instead, the analysis the Court employs is whether the ALJ

21    properly relied on the activities of daily living to discount Plaintiff's subjective testimony, not

22    whether a disabled person could also perform those same activities.

23           Plaintiff also argues that the ALJ mischaracterized his activities, making Plaintiff sound

24    more capable than he is. For example, Plaintiff asserts that the ALJ mischaracterized his ability

25    to care for his dog by stating that Plaintiff "feeds and plays with his dog" and "takes his dog to

26    the vet" because Plaintiff required his mother's help at times and his mother picks up the dog's

27    waste because Plaintiff has difficulty bending. (ECF No. 17 at 11) (citing AR 424, 4006). He

28    also states that the ALJ mischaracterized his ability to make food for himself by stating that

Plaintiff could "prepare[] meals," when really Plaintiff could only make frozen or canned food and could only cook with help, taking about five to fifteen minutes.  (ECF No. 17 at 11) (citing AR 425).  Plaintiff also asserts that the ALJ mischaracterized Plaintiff's ability to perform chores because Plaintiff really only performs certain tasks and takes breaks not typically permitted in the workplace.  (ECF No. 17 at 11).  He adds that he does not attend his niece's events if they involve physical activity and that his swimming consists of stretching, not doing laps.  (*Id.* at 11-12).

The ALJ's descriptions of Plaintiff's daily activities are not necessarily mischaracterizations.  They are accurate, even if they lack some context.  And the ALJ explained why she did not include this context.  In pointing out the context the ALJ lacks, Plaintiff points to a function report he filled out on April 25, 2016.  (ECF No. 17 at 11-13) (citing AR 423-30).  But the ALJ explicitly addressed that report.  The ALJ stated:

> The claimant stated on a Function Report dated April 25, 2016 that his injuries kept him from getting a steady job and that he could not do any physical activities or even do prolonged sitting without causing severe pain to his back, neck, and knee [].  However, the claimant also admitted he generally had no difficulty performing personal self-care functions; was able to do some light household chores; was able to drive a car; was able to do shopping; and could lift 10 to 15 pounds.

(AR 3849) (internal citations omitted).

Ultimately, the Court is not convinced by Plaintiff's arguments that the ALJ mischaracterized his activities of daily living.  And while Plaintiff takes issue with the ALJ's assertion that Plaintiff engaged in "somewhat normal" daily activities, this does not amount to a mischaracterization.  Because Plaintiff essentially asks the Court to interpret the evidence differently, the Court declines to reverse and award benefits or to remand on this ground.

### B.    Whether the ALJ connected the medical evidence to the testimony.

The ALJ need not perform a line-by-line exegesis of the claimant's testimony or draft dissertations when denying benefits.  *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020).  But the ALJ must identify which testimony she finds not credible and explain which evidence contradicts that testimony.  *Id.*  The ALJ may not offer non-specific conclusions that a claimant's

testimony was inconsistent with his medical treatment.  *Id.*  Even if the ALJ does provide a relatively detailed overview of the claimant's medical history, "providing a summary of medical evidence…is not the same as providing clear and convincing *reasons* for finding the claimant's symptom testimony not credible."  *Id.* at 1278 (quoting *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015)) (emphasis in original).

Here, the Court finds that the ALJ sufficiently explained which evidence contradicted Plaintiff's testimony such that the ALJ provided clear and convincing reasons for finding Plaintiff's testimony not credible.  The ALJ summarized Plaintiff's testimony as follows:

> The claimant alleged he was disabled due to neck pain, back pain, right ankle pain, gout, attention deficit hyperactivity disorder (ADHD), and depression…He testified that pain prevents him from working since his spinal surgeries as he continues to have muscle spasms, migraines, degenerative bones, and inflammation.  He stated that he is treated with manipulation, physical therapy, injections, strengthening, TENS unit, stretching, swimming, and medical marijuana.  He indicated he gets treatment for his neck, knee and ankle.  He explained that he takes Adderall, which will test positive for methamphetamine, and he only occasionally drinks alcohol.

(AR 3850).

The ALJ then addressed the medical record, outlining Plaintiff's treatment and objective medical findings.  (AR 3851-56).  But the ALJ did not stop there.  The ALJ then explained how the medical record contradicted Plaintiff's testimony:

> As discussed above, although the claimant has some pain and limitations, the records discussed above do not support the extent the claimant has alleged.  He has a significant ability to sit, stand, walk, lift and carry, based on the objective physical examinations and the reported improvement in his pain despite some interventions that have not been overall successful…As discussed throughout this decision, the claimant also does not present in distress (actually presents as calm) and his cognition is intact, which is also not consistent with debilitating pain.  He has had pain in different locations over time, but by his own reporting, his pain is mostly located in his lower back and he still reports benefit from medication such that his ability to do recreational activities and [activities of daily living] are improved…In function reports, the claimant acknowledged he can do personal care, takes his dog to the vet,

socializes with his family, goes to his niece's softball games and practice and her choir performances, and has no problems getting along with family, friends, neighbors or others…Also as discussed above, sitting is not generally reported to be an aggravating factor and his sensation is intact in all of his extremities. The claimant has some "mild" neuropathy at his wrist that was diagnosed in March 2018 but no consistent complaints or treatment for his left hand…The claimant also has "mild" neuropathies in his bilateral lower extremities but there is no indication of significant deficits in sensation, strength, or gait…Again, the claimant also drives for work…

(AR 3856).

The Court thus finds that the ALJ explained her reasons, grounded in the medical record, for finding Plaintiff's specific testimony less credible. The Court declines to reverse and award benefits or remand on this ground.

### C.    Whether the ALJ demonstrated that Plaintiff improved.

Plaintiff also argues that, in using the medical record to find Plaintiff's testimony not credible, the ALJ improperly characterized Plaintiff as "improving" over time. Notably, the Ninth Circuit opinions on which Plaintiff relies to support his position involve mental health, and not physical health symptoms. *See Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001) (explaining that "[t]hat a person who suffers from severe panic attacks, anxiety, and depression makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace"); *see Attmore v. Colvin*, 827 F.3d 872, 878 (9th Cir. 2016) ("[i]t is the nature of bipolar disorder that symptoms wax and wane over time."); *see Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014) (explaining that the treatment notes "consistently reveal that, despite some occasional signs of improvement, Ghanim continued to suffer frequent nightmares, hallucinations, social anxiety, difficulty sleeping, and feelings of hopelessness."). In those opinions, the Ninth Circuit affirmed that an ALJ errs if the ALJ finds that a claimant improves when that improvement is isolated or not sustained. *See Attmore*, 827 F.3d 877-78. Even setting aside the fact that the opinions on which Plaintiff relies are factually distinguishable, the Court does not find that they mandate the conclusion that the ALJ erred by determining that Plaintiff improved based on isolated or un-sustained improvement.

1    Plaintiff asserts that the ALJ erred in assessing that Plaintiff improved after his treatments,

2    despite the fact that Plaintiff later needed further treatments.  But the ALJ did not conclude from

3    those isolated instances of improvement that Plaintiff had improved overall.  Instead, the ALJ

4    reviewed the record as a whole, noting the improvements and subsequent treatments indicating

5    that the prior treatments were only marginally successful.  The ALJ then concluded that Plaintiff

6    had improved over time "despite some interventions that have not been overall successful."  (AR

7    3856).  The Court thus does not find that the ALJ erred in assessing Plaintiff's improvement over

8    time.  So, the Court declines to reverse and award benefits or remand on this ground.

9    **D.**    ***Whether the ALJ improperly characterized Plaintiff's treatment as conservative.***

10    Generally, evidence of conservative treatment is sufficient to discount a claimant's

11    testimony regarding severity of an impairment.  *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir.

12    2007).  "However, pain treatment with opioid analgesics generally is not considered

13    conservative."  *O'Connor v. Berryhill*, 355 F.Supp.3d 972, 985 (W.D. Wash. 2019) (citing *Kager*

14    *v. Astrue*, 256 F. App'x 919, 923 (9th Cir. 2007) (rejecting adverse credibility determination

15    premised on the absence of significant pain therapy where the claimant took prescription pain

16    medications including Methocarbomal and the narcotic analgesics Roxicet and Valium) *and*

17    *Hanes v. Colvin*, 651 F. App'x 703, 706 (9th Cir. 2016) (narcotic painkillers along with spinal

18    injections and radiofrequency ablation not conservative)).  In the Central District of California

19    case, *Mattis v. Berryhill*, the court rejected an ALJ's reasoning that a claimant was not fully

20    credible because the claimant's treatment was routine and conservative "in the form of pain

21    medications and physical therapy," after the claimant's last surgery.  *Mattis v. Berryhill*, No.

22    EDCV 17-0724-KS, 2018 WL 2077856, at *13 (C.D. Cal. May 1, 2018).  The court noted that,

23    while an ALJ may rely on the inconsistency inherent in a claimant reporting symptoms and pain

24    that are disabling but only receiving routine and conservative care as a reason to discount a

25    claimant's testimony, "[t]hree back surgeries followed by continued pain management through

26    strong opioid medications, is neither routine nor conservative treatment."  *Id.*

27    Plaintiff asserts that the ALJ erred by stating that Plaintiff "received mostly routine,

28    conservative and non-emergency treatment since the alleged onset date."  (AR 3851).  The Court

agrees.  The ALJ erred in concluding that Plaintiff's care was routine and conservative and thus

undermined his testimony.  The Commissioner asserts that the ALJ only mentioned conservative

care once and so, the ALJ cannot have erred.  (ECF No. 21 at 18).  This argument is not

developed and the Commissioner provides no authority to support his proposition.  And the Court

does not find that the ALJ's one mention of conservative treatment was negligible.  (*Id.*).  This is

because the ALJ explicitly stated that she found Plaintiff's testimony not credible because

Plaintiff received "mostly routine, conservative and non-emergency treatment since the alleged

onset date."  (AR 3851).  And then the ALJ immediately recounted Plaintiff receiving "several

surgeries in the cervical and lumbar spines," and later recounted Plaintiff's medial branch blocks,

epidural injections, spinal cord stimulator, and pain pump.  (AR 3851-54).  So, the ALJ's

characterization of Plaintiff's treatment—while isolated—indicates the ALJ's belief that

Plaintiff's treatment was conservative. [8]  This was error because, if the ALJ had properly

characterized Plaintiff's treatment, it would not have constituted a clear and convincing reason to

discount Plaintiff's testimony.  So, the Court finds that the ALJ erred on this ground and will

remand this case for the agency to further develop this issue.  For the reasons outlined below, the

Court will not reverse the ALJ decision and award benefits.

### III.  Whether the ALJ articulated specific and legitimate reasons for rejecting the treating physician's opinions.

For Social Security applications filed before March 27, 2017, under the "treating

physician rule," "[t]he medical opinion of a claimant's treating doctor is given 'controlling

weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic

techniques and is not inconsistent with the other substantial evidence in [the claimant's] case

record.'"  *D.T. v. Comm'r of Soc. Sec.*, 538 F. Supp. 3d 952, 956 (N.D. Cal. 2021) (citing *Revels*

---

[8] The ALJ stating that Plaintiff's treatment was "conservative" is not the same isolated statement as her statement that Plaintiff was not limited to the point of "total disability."  This is because, while the ALJ elsewhere outlined the correct disability standard, thus making it clear that the ALJ was not employing a heightened standard, here, the ALJ did not elsewhere address the fact that surgeries, injections, and the like are not typically considered conservative treatments.  So, the Court is left with the conclusion that the ALJ believed Plaintiff's treatment to be conservative.

1  *v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)); *see also* 20

2  C.F.R. § 416.927(c)(2) (2016) (same)).  "When a treating doctor's opinion is not controlling, it is

3  weighted according to factors such as the length of the treatment relationship and the frequency of

4  examination, the nature and extent of the treatment relationship, supportability, and consistency

5  with the record." *Revels*, 874 F.3d at 654 (citing 20 C.F.R. § 404.1527(c)(2)-(6)); *see also* 20

6  C.F.R. § 416.927(c)(2)-(6) (same).

7        When an ALJ gives a treating physician's opinion less than controlling weight, the ALJ

8  must do two things.  First, the ALJ must consider other factors, including the length of the

9  treatment relationship and the frequency of examination, the nature and extent of the treatment

10 relationship, supportability, consistency with the record, and specialization of the physician.  20

11 C.F.R. § 416.927(c)(2)-(6); *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (citing 20

12 C.F.R. § 404.1527(c)(2)-(6)).  Consideration must also be given to other factors, whether raised

13 by the claimant or by others, or if known to the ALJ, including the amount of relevant evidence

14 supporting the opinion and the quality of the explanation provided; the degree of understanding a

15 physician has of the Commissioner's disability programs and their evidentiary requirements; and

16 the degree of his or her familiarity with other information in the case record.  20 C.F.R.

17 §§ 416.927(c)(6), 404.1527(c)(6) (2016); *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).  The

18 failure to consider these factors, by itself, constitutes reversible error.  *Trevizo*, 871 F.3d at 676.

19        Second, the ALJ must provide reasons for rejecting or discounting the treating physician's

20 opinion.  The legal standard that applies to the ALJ's proffered reasons depends on whether

21 another physician contradicts the treating physician's opinion.  When a treating physician's

22 opinion is not contradicted by another physician, the ALJ must provide "clear and convincing"

23 reasons for rejecting or discounting the opinion, supported by substantial evidence.  *Id.* at 675.

24 When a treating physician's opinion is contradicted by another physician, an ALJ must provide

25 "specific and legitimate reasons" for rejecting or discounting the treating physician's opinion,

26 supported by substantial evidence.  *Id.*  "The ALJ can meet this burden by setting out a detailed

27 and thorough summary of the facts and conflicting clinical evidence, stating his interpretation

28 thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

1    Here, the ALJ did not err in assigning Dr. Lee's opinion little weight.[9]  As a preliminary

2   matter, Plaintiff's arguments on this topic are contradictory.  Plaintiff argues that, in assigning Dr.

3   Lee's opinion little weight, the ALJ failed to consider the factors such as the length of the

4   treatment relationship and the frequency of examination, the nature and extent of the treatment

5   relationship, supportability, and consistency with the record.  (ECF No. 17 at 16).  But Plaintiff

6   also criticizes the way that the ALJ considered these factors, implicitly conceding that the ALJ

7   did consider them, even though Plaintiff does not agree with how.  (*Id.* at 25) (pointing out that

8   the ALJ stated that Dr. Lee primarily treated Plaintiff with medication refills, which is the ALJ's

9   consideration of the nature of the treatment relationship); (ECF No. 22 at 9) (pointing out that the

10  ALJ criticized the length of Dr. Lee's treating relationship with Plaintiff, another factor that ALJ

11  must consider).  Contrary to Plaintiff's contradictory arguments, the ALJ did consider the factors

12  she was required to when finding Dr. Lee's opinion to carry less weight.

13    Regarding the length of the treating relationship, the ALJ noted that Dr. Lee only began

14  seeing Plaintiff two weeks prior to his hearing before the ALJ, which as Plaintiff points out, was

15  six months before Dr. Lee filled out a residual functional capacity questionnaire for Plaintiff.

16  (AR 3858).  Plaintiff takes issue with the ALJ noting the shortness of Plaintiff's treating

17  relationship with Dr. Lee.  But Plaintiff's arguments on this point make little sense.  Plaintiff

18  implies that the ALJ analyzed this factor unfairly because the ALJ did not criticize other "non-

19  examining doctors or consultative examiners" for having a short treating relationship with

20  Plaintiff.  (ECF No. 22 at 9).  But, by definition, non-examining doctors and consultative

21  examiners do not have a treating relationship with claimants at all.  *See Lester v. Chater*, 81 F.3d

22  821, 830 (9th Cir. 1995) (explaining that non-examining doctors neither treat the claimant nor

23  examine them); *Hilliard v. Barnhart*, 442 F.Supp.2d 813, 817 (N.D. Cal. Aug. 4, 2006)

24  (describing a consultative examiner as a doctor who examines, but does not treat, a claimant).

25  
_____

26  [9] Plaintiff and the Commissioner also argue over whether the ALJ erred by characterizing Dr.
    Lee's opinion as "extreme," and disagree over the definition of that word.  The Court declines to

27  engage this argument because it ultimately finds that the ALJ followed the pre-2017 requirements
    to analyze Dr. Lee's opinion, regardless of what definition the ALJ really meant when employing

28  the word "extreme."

1   The Court is also not convinced by Plaintiff's reliance on the Ninth Circuit decision in

2   *Ghokassian v. Shalala* for the proposition that the Ninth Circuit found that two treating visits over

3   a fourteenth month period constituted "an adequate treating relationship." *Ghokassian v. Shalala*,

4   41 F.3d 1300, 1303 (9th Cir. 1994). The Ninth Circuit did not make this explicit finding. *Id.*

5   Instead, in determining that a doctor was a claimant's treating physician, the Ninth Circuit noted

6   that the doctor had seen the claimant twice within a fourteen month period and saw no other

7   doctors during that time. *See id.* The Ninth Circuit did not conduct any further analysis on the

8   length of the treating relationship. And so, the Court is not convinced that the ALJ erred by

9   noting the short length of Plaintiff's treating relationship with Dr. Lee.

10          Regarding the nature and extent of the treating relationship, the ALJ addressed that

11  Plaintiff largely presented to Dr. Lee for medication refills, and only addressed his back pain.

12  (AR 3858). Plaintiff asserts that this is incorrect because "Dr. Lee noted that [Plaintiff] had

13  undergone several surgeries" and because "Dr. Lee was coordinating efforts to provide [Plaintiff]

14  with a surgically implanted pain pump" and later implanted the pump. (ECF No. 17 at 25). But

15  Plaintiff provides no argument explaining why simply noting Plaintiff's prior surgeries means

16  that Plaintiff had a more extensive treating relationship with Dr. Lee than the ALJ assessed. And

17  although Dr. Lee implanted a pain pump for Plaintiff, the Court does not agree that the ALJ

18  mischaracterized Plaintiff's treatment with Dr. Lee by stating that Plaintiff "largely" presented for

19  medication refills when the majority of Plaintiff's appointments were for refills.

20          Regarding supportability, the ALJ pointed out that Dr. Lee's objective medical findings

21  demonstrated that Plaintiff did not appear in any distress, with mood deficits, or with significant

22  physical deficits other than a positive straight leg raise test and some tenderness and reduced

23  range of motion, which findings do not support Dr. Lee's opined restrictions. (AR 3858).

24  Plaintiff argues that the ALJ erred in asserting that the objective findings did not support Dr.

25  Lee's limitations because of the positive straight leg raise test, tenderness, and reduced range of

26  motion. (ECF No. 17 at 25). But the ALJ did address those things and Plaintiff's provides no

27

28

1  analysis or authority that the ALJ wrongly addressed those objective findings. Ultimately,

2  Plaintiff's argument simply asks the Court to come to a different conclusion than the ALJ.[10]

3       Regarding consistency, the ALJ compared Dr. Lee's opinion to the broader medical

4  record and Plaintiff's activities of daily living. (AR 3858). Plaintiff relies on his broader

5  argument that the medical record demonstrates his disability in arguing that the ALJ erred in

6  finding Dr. Lee's opinion inconsistent. But again, Plaintiff's argument amounts to him asking the

7  Court to reweigh the evidence.

8       The one factor the ALJ did not address is Dr. Lee's treating specialty. But Plaintiff did

9  not raise this issue in his brief. And the Court cannot manufacture arguments for Plaintiff.

10       Second, the ALJ provided clear and convincing reasons for discounting Dr. Lee's

11  opinions. As a preliminary matter, although Plaintiff does not address this point, the ALJ did not

12  explicitly rely on another doctor's opinion that contradicted Dr. Lee's opinion. So, the ALJ was

13  required to provide clear and convincing reasons for discounting Dr. Lee's opinion. The Court

14  finds that the ALJ met this burden because she set out a detailed and thorough summary of the

15  facts and conflicting evidence, stating her interpretation, and making findings.

16       Specifically, the ALJ pointed to "other examinations [that] do not include significant

17  deficits," and cited to those portions of the record. (AR 3858). The ALJ also pointed to

18  electromyography[11] records which "showed only mild bilateral medial and lateral plantar nerve

19  neuropathy and S1 radiculopathy." (AR 3858). Plaintiff takes issue with the ALJ's reliance on

20  other medical records, incorporating by reference his arguments that the medical records do not

21  support the RFC. (ECF No. 17 at 25-26). But as the Court has already found, Plaintiff's

22  arguments essentially ask the Court to reweigh the medical evidence. The Court declined to do

23

24

25       [10] Plaintiff also argues that he was in fact in distress when he presented to Dr. Lee. (ECF No. 17

26  at 25). But he concedes in reply that the notes addressing Plaintiff's distress were not Dr. Lee's
observations, but Dr. Lee's recitation of Plaintiff's subjective reports. (ECF No. 22 at 10).

27  [11] An electromyogram ("EMG") is "[a] graphic representation of the electric currents associated

28  with muscular action." *Stedmans Medical Dictionary*, STEDMANS 283110 (2014).

that earlier and declines to do so here.  The ALJ's reliance on other medical records to find that

Dr. Lee's opinion was not entitled to controlling weight is sufficient and not in error.

Additionally, the ALJ pointed to Plaintiff's activities of daily living, including his ability

to work part time, drive, and use a computer, and Dr. Lee's own notes that Plaintiff's functional

status is "independent."  (AR 3858).  Plaintiff argues that his work activities—specifically,

working a few hours a week, working only two to four days per week and one to three hours per

day, and carrying less than ten pounds when working—are actually consistent with Dr. Lee's

assessed limitations.  (ECF No. 17 at 26).  So, Plaintiff asserts that those activities cannot

constitute clear and convincing reasons to discount Dr. Lee's opinions.  However, the

Commissioner points out that Plaintiff had reported that his job required him to lift fifteen—not

ten—pounds at a time and that Plaintiff testified at the June 2023 hearing that he could lift up to

thirty or forty pounds at a time, which activities do contradict Dr. Lee's findings.  (ECF No. 21 at

22) (citing AR 3488 (Dr. Lee's opinion that Plaintiff could rarely lift ten pounds and less and

never lift twenty pounds and above), AR 3715 (same), AR 3850 (the ALJ's opinion discussing

Plaintiff's testimony that he could lift thirty to forty pounds), AR 3887 (Plaintiff testifying that

the pizzas he delivers weigh about fifteen pounds), AR 3899 (Plaintiff testifying that the most he

can lift without feeling pain is thirty to forty pounds)).  So, the Court does not find that Plaintiff's

activities of daily living are consistent with Dr. Lee's opinions such that they do not constitute

clear and convincing reasons for the ALJ to have discounted them.

Ultimately, the Court finds that the ALJ properly followed the pre-2017 regulations in

assessing Dr. Lee's opinions.  The Court thus declines to award benefits or remand this case to

the ALJ for further proceedings on this ground.

**IV.    Remand for further proceedings, not for an award of benefits, is appropriate here.**

When evaluating whether this case presents the "rare" circumstances justifying a reversal

and remand for payment, the Court normally applies a three-step test.  *Treichler*, 775 F.3d at

1100-01.  Under this procedure, the Court first asks whether the ALJ has failed to provide legally

sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion.  *Id.* at

1100-01.  Second, if the ALJ has erred, the Court determines whether the record has been fully

developed, whether there are outstanding issues that must be resolved before a determination of disability can be made, and whether further administrative proceedings would be useful. *Id.* at 1101. Administrative proceedings are generally useful where the record has not been fully developed, there is a need to resolve conflicts and ambiguities, or the presentation of further evidence may prove enlightening in light of the passage of time. *Id.* Where there is conflicting evidence, and not all essential factual issues have been resolved, a remand for an award of benefits is inappropriate. *Id.* Third, if the Court finds that no outstanding issues remain and further proceedings would not be useful, the Court may find the relevant testimony credible as a matter of law and then determine whether the record, taken as a whole, leaves "not the slightest uncertainty as to the outcome of the proceeding." *Id.* But even when all three elements are satisfied, the decision whether to remand a case is in the Court's discretion. *Id.* at 1101-1102.

Here, the Court declines to reverse and remand for payment of benefits because this case does not constitute the rare and extreme circumstances that would justify it. At the second step of the analysis, there is the significant outstanding issue of how the ALJ concluded that Plaintiff's care was routine and conservative such that it contradicted his subjective testimony. There is thus conflicting evidence in the record regarding the nature of this treatment and the way the ALJ employed it in analyzing Plaintiff's testimony such that an award for benefits would be inappropriate. Further administrative proceedings would be vital to resolving these issues and this is not the case where the record, taken as a whole, leaves not the slightest uncertainty as to the outcome of the proceeding. The Court thus remands these issues to the agency for further proceedings.

///

///

///

1    **IT IS THEREFORE ORDERED** that Plaintiff's motion for remand and award of

2    benefits (ECF No. 17) is **granted in part and denied in part.** It is granted in part regarding

3    Plaintiff's request that the Court remand the case to the agency for further proceedings regarding

4    how the agency considered his treatment in discounting his subjective testimony. It is denied in

5    all other respects.

6    **IT IS FURTHER ORDERED** that this case is remanded for further proceedings so that

7    the ALJ may articulate how the ALJ considered Plaintiff's treatment in determining the

8    credibility of Plaintiff's subjective testimony.

9    **IT IS FURTHER ORDERED** that the Clerk of Court is kindly directed to enter

10    judgment accordingly and close this case.

11

12    DATED: February 11, 2025

13    _____

14    DANIEL J. ALBREGTS
      UNITED STATES MAGISTRATE JUDGE

15

16

17

18

19

20

21

22

23

24

25

26

27

28